UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LOUIS LAMON,<br><br>            Plaintiff,<br><br>    vs.<br><br>B. AMRHEIGN, et al.,<br><br>            Defendants. | 1:12-cv-00296-AWI-GSA-PC<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND<br>(Doc. 27.)<br><br>THIRTY DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT |

**I.      BACKGROUND**

Barry Lamon ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on February 28, 2012. (Doc. 1.) The Court screened the Complaint pursuant to 28 U.S.C. § 1915A and issued an order on December 7, 2012, dismissing the Complaint for failure to state a claim, with leave to amend. (Doc. 11.) On February 13, 2014, Plaintiff filed the First Amended Complaint, which is now before the court for screening. (Doc. 27.)

**II.     SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at the California State Prison-Sacramento in Represa, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR). The events at issue in the First Amended Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was incarcerated there. Plaintiff names as defendants B. Amrheine (Registered Nurse), Correctional Officer ("C/O") Austin, J. Bandoc (Nurse Practitioner), Dr. E. Clark, L. Shultz (Registered Dietitian), C/O Wilson, and C/O Yzguerra (collectively, "Defendants"). Defendants were all employed by the CDCR at the time of the events at issue. Plaintiff's factual allegations follow.

///

### *Prescription for Nutritional Supplement Nutren*

Prior to May 3, 2009, Plaintiff had submitted more than one hundred inmate prison grievances and filed more than five civil rights lawsuits against CDCR employees, and thus earned the derogatory description of "legal beagle" among CDCR personnel at CSP. Out of retaliation for Plaintiff's many grievances and lawsuits, C/Os tainted his meals with chemicals that caused him excruciating headaches and esophageal, intestinal, and rectal pain. Plaintiff reported his severe reactions to the Acute Care Hospital in Corcoran more than twenty times. In response to his continuing complaints, Corcoran mental health staff declared Plaintiff delusionally insane and prescribed a wide range of mental health drugs for several years, to no avail. General medical practitioners at Corcoran prescribed an even broader range of medicinal remedies, again to no avail.

On or about May 3, 2009, defendant Dr. Edgar Clark examined Plaintiff and prescribed him a nutritional supplement called Nutren, which was canned and therefore tamper-resistant. Dr. Clark told Plaintiff that he based his decision to issue the Nutren on the grounds that it was the only remedy that had ever worked successfully previously, that it was far less expensive than the majority of the plethora of mental health related and other medicinal approaches that had been used, and its only drawback was more political than medical in nature. Dr. Clark said that the C/Os and their supervisors felt that if "Medical" prescribed it for those inmates who alleged that C/Os were tainting their meals, it would prove a sort of medical staff validation, if not agreement, with their claims against them. Dr. Clark told Plaintiff not to tell any of the other inmates that he was prescribing Nutren, or they would also demand it, and he would discontinue Plaintiff's prescription.

Plaintiff's supervising C/Os became angry about the prescription, because it frustrated their efforts to taint Plaintiff's meals. They began to openly threaten to get the Nutren cancelled. Several of the nurses caved to the pressure, opened Plaintiff's canned Nutren, and tainted it prior to the supplement arriving at Plaintiff's cell.

On May 5, 2009, Plaintiff filed an inmate health care appeal alleging that the LVNs were opening and tainting his Nutren. On or about May 28, 2009, defendant Nurse B.

Amrheine heard the appeal and asked Plaintiff to withdraw it. Plaintiff refused and defendant Amrheine said, "Well, fine, if that's where you want to go with this, but you forget that you were only prescribed Nutren as a courtesy based on your issues with 'Custody.' You shouldn't bite the hands that feed you." (First Amended Complaint, Doc. 27 at 9 ¶20.) About thirty minutes later, LVN Severmilch [not a defendant] passed by Plaintiff's cell and instead of issuing Plaintiff his Nutren, smugly informed him that defendants Amrheine, Bandoc, and Schultz had cancelled the Nutren. These nurses did not have the authority to cancel Dr. Clark's prescription. Out of reprisal for Plaintiff filing the appeal, defendants Amrheine, Bandoc, and Schultz met, discussed, considered the potential threat to Plaintiff's health, safety and well-being, of which they were aware, and intentionally agreed to interfere with Plaintiff's doctor-prescribed medical care. Because of this interference, Plaintiff suffered severe headaches, esophageal, intestinal and abdominal pains, muscle cramps, fright, fear, intimidation, and loss of rights.

On July 16, 2009, Plaintiff filed an appeal alleging that defendants Amrheine, Bandoc, and Schultz' retaliatory cancellation of the Nutren violated Plaintiff's rights under the First Amendment and went against a full medical doctor's orders. Afterward, Dr. Clark saw Plaintiff and reminded him that he had warned Plaintiff not to make waves or he would cancel the Nutren. When Plaintiff objected to the nurses improperly cancelling the prescription, Dr. Clark replied that nevertheless, Plaintiff should not have filed an appeal because they had been doing what they could to help him, and now they felt Plaintiff should just be left on his own to defend against whatever "Custody" did to him. Plaintiff alleges that Dr. Clark, as a medical professional, knew Plaintiff faced a threat of serious injury to his health, but deliberately disregarded it and elected not to provide the Nutren, as a reprisal for Plaintiff filing an appeal against defendants Amrheine, Bandoc, Schultz, and other medical personnel.

### *Transport to Medical Appointment*

Based on Plaintiff's continuing complaints that he was suffering pains after consuming his meals, on or about May 23, 2009, prison medical doctors issued orders for Plaintiff to be examined by an off-site cardiovascular specialist. On or about June 18, 2009, defendants

Officers Austin and Wilson, both employed as Corcoran Medical Transportation Officers, arrived at Plaintiff's housing cell at about 6:20 a.m. to take him to the cardiovascular specialist, despite Plaintiff having been issued a gate pass for 8:00 a.m. and having been informed by medical staff that he would leave at 8:00 a.m. Plaintiff was angry that defendants Austin and Wilson elected to begin the transportation so early, which would deprive Plaintiff of a hot breakfast and instead cause him to be issued a bagged peanut butter and jelly sandwich for breakfast. Plaintiff verbally protested and informed the officers that he would file an appeal against them.

Plaintiff complied with all of the officers' instructions and otherwise prepared for transportation. The officers stood outside Plaintiff's cell and Plaintiff was subjected to a strip-search and then dressed in the bright-red paper jumpsuits used by the CDCR during transportation of prisoners. Defendants Austin and Wilson bantered back and forth with C/O's about Plaintiff's threat to file an appeal against them for arriving so early. Austin and Wilson admitted that "the front desk" had told them Plaintiff was a "legal beagle" who was suing "everyone at the prison," and that they had come early so they "could [bring] him back and, hopefully, pick up a second transport" during work-time hours, and that Plaintiff "ought to be glad to be going, period." (First Amended Complaint, Doc. 27 at 13 ¶37.) Plaintiff's hands and feet were shackled, and he was placed in a security cage in the transportation van.

Defendants Austin and Wilson drove up to the exit gate supervised by defendant C/O Yzguerra, who opened the side door of the van and the security cage, and confirmed Plaintiff's identity. Yzguerra commented to defendants Austin and Wilson, "Wow. He's a real bundle of joy, what's got a bug up his a--?" Austin and Wilson told him that Plaintiff was angry about missing breakfast and was threatening to sue them for arriving too early. They said they didn't know why Medical was sending Plaintiff out, but Plaintiff was a real a--hole who was more likely than not only trying to collect evidence to file appeals. Defendant Austin stated, "Well, f--- him. Let's just put his a-- back and see if we can pull a tour with as close to eight hours as we can get. Why put up with this sh-- for the next four hours?" (First Amended Complaint, Doc. 27 at 14 ¶41.) Plaintiff alleges that defendants Austin, Wilson, and Yzguerra met,

discussed, and considered the substantial threat of serious harm that would be posed to Plaintiff's health if they interfered with Plaintiff's doctor's orders to transport Plaintiff to the cardiovascular specialist.

Plaintiff requests monetary damages, attorneys' fees, costs of suit, and declaratory relief.

### IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

### A. Retaliation

As discussed by the Ninth Circuit in Watison v. Carter:

> "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five elements. Id. First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which

retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).

Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.

Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir.1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

**Discussion**

***Defendants Amhrein and Bandoc (Nurses), and Schultz (Dietitian)***

Plaintiff claims that defendants Amhreine, Bandoc, and Schultz retaliated against him when they cancelled his prescription for Nutren after he filed an appeal against the nurses. Plaintiff alleges that he filed an inmate appeal on May 9, 2009, complaining that the nurses were opening and tainting his nutritional supplement, Nutren, before it was given to him. Plaintiff alleges that after he refused to withdraw the appeal, defendants Amhreine, Bandoc, and Schultz cancelled his prescription for Nutren.

Plaintiff fails to state a cognizable claim for retaliation against the nurses and dietitian because he fails to show that cancelling the Nutren prescription was an adverse action against him. If the Nutren was being tainted, as Plaintiff alleges, then preventing Plaintiff's consumption of Nutren was an action that was beneficial, not adverse, to Plaintiff. Further, cancelling medication that Plaintiff claimed was being tainted is not an action that would chill

///

or silence Plaintiff from filing more appeals.  Thus, Plaintiff fails to state a cognizable claim for retaliation against defendants Amhreine, Bandoc, or Schultz for cancelling his prescription.

### *Defendant Dr. Clark*

Plaintiff claims that Dr. Clark retaliated against him because Plaintiff filed an appeal against the nurses.  Plaintiff alleges that on July 16, 2009, he filed an inmate appeal alleging that the nurses had cancelled his prescription against the doctor's orders.  After filing the appeal, Plaintiff met with Dr. Clark and complained about the cancellation.  Dr. Clark told Plaintiff he should not have filed the appeal.  Also, Dr. Clark refused to reinstate the prescription.

These allegations do not state a claim for retaliation against Dr. Clark, because Plaintiff fails to show the requisite causal connection between Plaintiff's appeal against the nurses and Dr. Clark's refusal to reinstate the prescription.  Therefore, Plaintiff fails to state a cognizable claim for retaliation against Dr. Clark.

### *Defendants Austin, Wilson, and Yzguerra*

Plaintiff also claims that defendants Austin, Wilson, and Yzguerra retaliated against him when defendants Austin and Wilson refused to transport Plaintiff to his off-site medical appointment after Plaintiff threatened to file an appeal against them for transporting him so early in the morning.

As for defendant Yzguerra, Plaintiff fails to allege facts showing that Yzguerra acted against him, or that there was a causal connection between Yzguerra's conduct and Plaintiff's litigation activities. Plaintiff's conclusory language alleging that Yzguerra "met [with Austin and Wilson], discussed and considered the substantial threat of serious harm [to Plaintiff] if they interfered with Plaintiff's doctor's orders to transport Plaintiff" is not sufficient to state a retaliation claim against Yzguerra.  (First Amended Complaint, Doc. 27 at 14 ¶42.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  Therefore, Plaintiff fails to state a retaliation claim against defendant Yzguerra.

///

As for defendants Austin and Wilson, Plaintiff alleges in the First Amended Complaint that the officers refused to transport him because Plaintiff threatened to file an appeal against them. However, in his initial Complaint filed on February 28, 2012, Plaintiff alleges that the officers also denied his transportation "based on the sham-excuse that [Plaintiff] would not say [his] name to Defendant Yzguerra." (Complaint, Doc. 1 at 17 ¶ 58.) By this discrepancy between the initial Complaint and the First Amended Complaint, it appears that Plaintiff has omitted material facts from the First Amended Complaint.[1] Thus, the court cannot find that Plaintiff shows a sufficient causal connection between the exercise of his First Amendment rights and the action against him. Moreover, if the officers' actions against Plaintiff advanced legitimate goals of the correctional institution, Plaintiff cannot state a claim for retaliation. Further, Plaintiff has not established that the officers' actions in refusing to transport him were adverse actions. Plaintiff fails to clarify whether he was transported later, or whether his medical appointment was completely cancelled. If the transportation was rescheduled for a time later in the day, such action would not be adverse, because Plaintiff wanted to be transported later in the day.

Based on the foregoing, Plaintiff fails to state a cognizable claim for retaliation against any of the Defendants.

### B.  Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the

---

[1] Plaintiff is cautioned that the intentional omission of material facts in a pleading constitutes a falsehood and may result in the imposition of sanctions under Rule 11 which provides, "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation of discovery." Fed. R. Civ. P. 11(b)(3).

defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . .
///

that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

**Discussion**

Plaintiff has demonstrated that he had a serious medical need because he was suffering excruciating headaches and esophageal, intestinal, and rectal pains. However, Plaintiff fails to allege facts showing that any of the defendants were deliberately indifferent to his serious medical needs.

### *Defendant Dr. Clark*

Plaintiff has not shown that Dr. Clark acted, or failed to act, while knowing about and deliberately disregarding a substantial risk of serious harm to Plaintiff's health. Plaintiff alleges that Dr. Clark knew he had a serious medical need. Dr. Clark met with Plaintiff, examined him, and prescribed a nutritional supplement, Nutren. Dr. Clark refused to reinstate the prescription after Plaintiff alleged that the supplement was being tainted by the nurses before it was given to him. This conduct does not amount to deliberate indifference to Plaintiff's medical needs under the Eighth Amendment. Plaintiff's conclusory language that "Dr. Clark, as a medical professional, knew Plaintiff faced a threat of serious injury to his health, but deliberately disregarded it and elected not to provide the Nutren" is insufficient to state a claim for deliberate indifference. (First Amended Complaint, Doc. 27 at 12 ¶31.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Therefore, Plaintiff fails to state an Eighth Amendment medical claim against defendant Dr. Clark.

### *Defendants Austin, Wilson, and Yzguerra*

Plaintiff also fails to allege facts showing that defendants Austin, Wilson, or Yzguerra acted with deliberate indifference to his serious medical needs. Plaintiff alleges that the two Transportation Officers Austin and Wilson, and C/O Yzguerra who supervised the exit gate, decided not to transport Plaintiff to his off-site medical appointment. Plaintiff alleges that defendants Austin and Wilson said they did not know why Medical was sending Plaintiff out,

and they discussed their opinion that Plaintiff was probably only trying to collect evidence to file appeals. There are no allegations showing that defendant Yzguerra knew about Plaintiff's medical condition. If none of these three officers knew about Plaintiff's serious medical needs, they could not have acted while deliberately disregarding a substantial risk of serious harm to Plaintiff's health. Therefore, Plaintiff fails to state an Eighth Amendment medical claim against defendants Austin, Wilson, or Yzguerra.

### *Defendants Amrhein and Bandoc (Nurses), and Schultz (Dietitian)*

Plaintiff alleges that defendants Amrheine, Bandoc, and Schultz violated his rights to medical care when they cancelled his prescription for Nutren. However, there are no facts showing that these defendants cancelled the prescription knowing that their actions would subject Plaintiff to a substantial risk of serious harm to his health. Therefore, Plaintiff fails to state an Eighth Amendment medical claim against defendants Amrheine, Bandoc, or Schultz.

### C. Due Process

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Plaintiff claims that his rights to due process were violated because he was not provided with a meaningful inmate appeals process. Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any

substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal, without more, are not actionable under section 1983. Buckley, 997 F.2d at 495. Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails to state a cognizable claim for the processing and/or reviewing of his 602 inmate appeals.

### D.  Conspiracy

Plaintiff alleges that defendants conspired to interfere with his medical care and to retaliate against him. In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share

///

the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

As discussed above, the court has found that Plaintiff fails to state any cognizable claims against Defendants under § 1983. Therefore, Plaintiff's claim for conspiracy to violate his rights under § 1983 also fails.

### E.    State Law Claims

Plaintiff brings claims against Defendants for negligence and for failing to comply with state regulations. Plaintiff is informed that violation of state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

### F.    Relief Requested

In addition to money damages, Plaintiff seeks declaratory relief, attorney's fees, and costs of suit. With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. A declaration that Defendants violated Plaintiff's rights is unnecessary.

With regard to attorney's fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . . " 42 U.S.C. § 1988(b). Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit. Plaintiff is representing himself in this action. Because

///

Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. Gonzales v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

## V.     CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that Plaintiff's First Amended Complaint fails to state any claims upon which relief can be granted under § 1983 against any of the defendants. "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" AmerisourceBergen Corp. v. Dialysis West, Inc., 445 F.3d 1132, 1136 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). Plaintiff shall be granted leave to file a Second Amended Complaint within thirty days, curing the deficiencies found by the court in this order. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).

The Second Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). In order to hold an individual defendant liable, Plaintiff must name the individual defendant, describe where that defendant is employed and in what capacity, and explain how that defendant acted under color of state law. Plaintiff should state clearly, in his own words, what happened and how each defendant's actions violated the particular right described by Plaintiff.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding allegations of events occurring or claims arising after February 28, 2012. Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). In addition, Plaintiff should take care to include only those claims that were administratively exhausted before he filed the initial Complaint on February 28, 2012.

Plaintiff is reminded that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. Aug. 29, 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's First Amended Complaint, filed on February 13, 2014, is DISMISSED for failure to state a claim, with leave to amend;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:12-cv-00296-AWI-GSA-PC; and

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **August 12, 2014**                      **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE