# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY LOUIS LAMON,<br><br>   Plaintiff,<br><br>   v.<br><br>C/O AUSTIN, et al.,<br><br>   Defendants. | Case No.  1:12-cv-00296-AWI-BAM-PC<br><br>FINDINGS AND RECOMMENDATIONS THAT THIS ACTION PROCEED AGAINST DEFENDANTS AUSTIN, WILSON AND YZGUERRA AND THAT THE REMAINING DEFENDANTS BE DISMISSED<br><br>OBJECTIONS DUE IN FOURTEEN DAYS |

## I.    Overview

Plaintiff is a state prisoner proceeding pro se and in forma pauperis pursuant to 42 U.S.C. § 1983.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(1)(B) and Local Rule 302.    Pending before the Court is Plaintiff's February 23, 2015, second amended complaint filed in response to the August 12, 2014, order dismissing the first amended complaint with leave to amend (ECF No. 28.)

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at CCI Tehachapi, brings this action correctional officials employed by the CDCR at CSP Corcoran, where the events at issue occurred.  Plaintiff names as defendants the following individuals: Registered Nurse B. Amrhein; Correctional Officer (C/O) Austin; C/O Wilson; C/O Yzguerra; Nurse Practitioner J. Bandoc; Dr. E. Clark; Dietitian L. Schultz.

## II.    Allegations

As noted in the order dismissing the first amended complaint, Plaintiff sets forth the following allegations.  Prior to May 3, 2009, Plaintiff had submitted more than one hundred inmate prison grievances and filed more than five civil rights lawsuits against CDCR employees, and thus earned the derogatory description of "legal beagle" among CDCR personnel at CSP.  In retaliation for Plaintiff's many grievances and lawsuits, Plaintiff alleges that C/Os tainted his meals with chemicals that caused him excruciating headaches and esophageal, intestinal and

rectal pain.  Plaintiff reported his severe reactions to the Acute Care Hospital in Corcoran more than twenty times.  In response to his continuing complaints, Corcoran mental health staff declared Plaintiff delusionally insane and prescribed a wide range of mental health drugs for several years, to no avail.  General medical practitioners at Corcoran prescribed an even broader range of medicinal remedies, again to no avail.

On or about May 3, 2009, Defendant Dr. Clark examined Plaintiff and prescribed a nutritional supplement called Nutren, which was canned and therefore tamper-resistant.  Dr. Clark told Plaintiff that he based his decision to issue the Nutren on the grounds that it was the only remedy that had ever worked successfully previously, that it was far less expensive than the majority of the plethora of mental health related and other medicinal approaches that had been used, and its only drawback was more political than medicinal in nature.  Dr. Clark said that the C/Os and their supervisor felt that if "Medical" prescribed it for those inmates who alleged that C/Os were tainting their meals, it would prove a sort of medical staff validation, if not agreement, with the claims against them.  Dr. Clark told Plaintiff not to tell any of the other inmates that he was prescribing Nutren, or they would also demand it, and he would discontinue Plaintiff's prescription.

Plaintiff's supervising C/Os became angry about the prescription, because it frustrated their efforts to taint Plaintiff's meals.  They began to openly threaten to get the Nutren cancelled.  Several of the nurses gave in to the pressure, opened Plaintiff's canned Nutren, and tainted it prior to the supplement arriving at Plaintiff's cell.

On May 5, 2009, Plaintiff filed an inmate health care appeal alleging that LVNs were opening and tainting his Nutren.  On or about May 28, 2009, Defendant Nurse Amrhein heard the appeal and asked Plaintiff to withdraw it.  Plaintiff refused and Defendant Amrhein said: "Well, fine, if that's where you want to go with this, but your forget that you were only prescribed Nutren as a courtesy based on your issues with 'custody.'  You shouldn't bite the hand that feeds you."  (First Am. Compl. ¶20.)  About thirty minutes later, an LVN passed by Plaintiff's cell and instead of issuing Plaintiff his Nutren, smugly informed him that Defendants Amrhein, Bandoc and Schultz cancelled the Nutren.  These nurses did not have the authority to

cancel Dr. Clark's prescription. Out of reprisal for Plaintiff filing the appeal, Defendants Amrhein, Bandoc and Schultz met and discussed the potential threat to Plaintiff's health, safety and well-being, of which they were aware, and intentionally agreed to interfere with Plaintiff's doctor-prescribed medical care. Because of this interference, Plaintiff suffered severe headaches, esophageal, intestinal and abdominal pains, muscle cramps, fright, fear, intimidation and loss of rights.

On July 16, 2009, Plaintiff filed an appeal alleging that Defendants Amrhein, Bandoc and Schultz's retaliatory cancellation of the Nutren violated Plaintiff's rights under the First Amendment and went against a full medical doctor's orders. Afterwards, Dr. Clark saw Plaintiff and reminded him that he had warned Plaintiff not to make waves or he would cancel the Nutren. When Plaintiff objected to the nurses improperly cancelling the prescription, Dr. Clark replied that nevertheless, Plaintiff should not have filed an appeal because they had been doing what they could to help him, and now they felt that Plaintiff should just be left on his own to defend against whatever "custody" did to him. Plaintiff alleges that Dr. Clark, as a medical professional, knew Plaintiff faced a threat of serious injury to his health, but deliberately disregarded it and elected not to provide the Nutren as a reprisal for Plaintiff filing an appeal against Defendants Amrhein, Bandoc, Schultz and other medical personnel.

Based on Plaintiff's continuing complaints that he was suffering pains after consuming his meals, on or about May 23, 2009, prison medical doctors issued orders for Plaintiff to be examined by an off-site cardiovascular specialist. On or about June 18, 2009, Defendants Austin and Wilson, employed as Corcoran Medical Transportation Officers, arrived at Plaintiff's cell at about 6:20 a.m. to take him to the cardiovascular specialist, despite Plaintiff having been issued a gate pass for 8:00 a.m. and having been informed by medical staff that he would leave at 8:00 a.m. Plaintiff was angry that Defendants Austin and Wilson elected to transport him early, which would deprive Plaintiff of a hot breakfast and instead cause him to be issued a bagged peanut butter and jelly sandwich for breakfast. Plaintiff verbally protested and informed the officers that he would file an appeal against them.

Plaintiff complied with all of the officers' instructions and otherwise prepared for

3

transportation. The officers stood outside Plaintiff's cell and Plaintiff was subjected to a strip-search. Defendants Austin and Wilson bantered back and forth with C/Os about Plaintiff's threat to file an appeal against them for arriving so early. Austin and Wilson admitted that "the front desk" had told them Plaintiff was a "legal beagle" who was suing "everyone at the prison," and that they had come early so they "could [bring] him back and, hopefully, pick up a second transport" during work-time hours, and that Plaintiff "ought to be glad to be going, period." (Id. ¶ 37.) Plaintiff's hands and feet were shackled, and he was placed in a security cage in the transportation van.

Defendants Austin and Wilson drove up to the exit gate supervised by Defendant Yzguerra, who opened the side door of the van and the security cage, and confirmed Plaintiff's identity. Yzguerra commented to Austin and Wilson, "Wow. He's a real bundle of joy, what's got a bug of his a\*\*?" Austin and Wilson told him that Plaintiff was angry about missing breakfast and was threatening to sue them for arriving too early. They said they didn't know why Medical was sending Plaintiff out, but Plaintiff was "a real a\*\*- hole who was more likely than not only trying to collect evidence to file appeals." Austin stated, "Well, f\*\*\* him. Let's just put his a\*\*- back and see if we can pull a tour with as close to eight hours as we can get. Why put up with this sh\*\*- for the next four hours?" (Id. ¶ 41.) Plaintiff alleges that Defendants Austin, Wilson and Yzguerra met, discussed, and considered the substantial threat of serious harm that would be posed to Plaintiff's health if they interfered with Plaintiff's doctors' orders to transport Plaintiff to the cardiovascular specialist.

**III.   Claims**

In the order dismissing the first amended complaint, the Court found that Plaintiff's claims of retaliation, denial of medical care, due process, conspiracy and state law claims failed to state a claim for relief. Plaintiff's February 23, 2015, second amended complaint consists of a form complaint, along with a typed complaint in pleading form titled as a supplement to the second amended complaint. The Court will consider both documents as an inclusive second amended complaint. In his statement of claim in the form portion of the second amended complaint, Plaintiff lists under claim 1, the following: "Conspiracy to Retaliate against, and

4

interfere with Plaintiff's First Amendment right to petition the government, also violate Plaintiff's Fourteenth Amendment right to due process and equal protection under the law." In the pleading portion of the second amended complaint, sets forth claims of First Amendment retaliation, denial of medical care, interference with medical care, state law negligence and a claim pursuant to California Civil Code § 52.1.

### A. **Medical Care**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)(quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 10986.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980)(citing Estelle, 429 U.S. at 105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern,

5

45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

In the order dismissing the first amended complaint, the Court noted that Plaintiff demonstrated that he had a serious medical need because he was suffering excruciating headaches and esophageal, intestinal and rectal pains. However, Plaintiff failed to allege facts showing that any of the defendants were deliberately indifferent to his serious medical needs.

### 1. Dr. Clark

In the order dismissing the first amended complaint, the Court noted that Plaintiff had not shown that Dr. Clark acted, or failed to act, while knowing about and deliberately disregarding a substantial risk of serious harm to Plaintiff's health. Plaintiff alleged that Dr. Clark knew he had a serious medical need. Dr. Clark met with Plaintiff, examined him, and prescribed a nutritional supplement, Nutren. Dr. Clark refused to reinstate the prescription after Plaintiff alleged that the supplement was being tainted by nurses before being given to him. The Court noted that such conduct did not amount to deliberate indifference under the Eighth Amendment. The Court found that Plaintiff's conclusory language that "Dr. Clark, as a medical professional, knew Plaintiff faced a threat of serious injury to his health, but deliberately disregarded it and elected not to provide the Nutren" was insufficient to state a claim for deliberate indifference.

In the second amended complaint, Plaintiff alleges generally that he informed Dr. Clark, along with Defendants Bandoc, Branson, Schultz "and other Corcoran medical staff" about his suffering, and requesting "evaluative tests to confirm the presence of pain-causing chemical substances in my anatomical system," and requesting medical care. (Second Am. Compl. ¶ 20.) Although Plaintiff alleges that "they" denied his request for testing and refused to accept the declarations of other prisoners, they did take his blood pressure, provided him with gastrointestinal remedies and "otherwise try to intentionally minimize and/or entirely suppress my allegations that c/o's were tainting my meals." (Id.) Plaintiff alleges that prior to 2009, Dr. Clark did examine and treat him, but was careful to avoid any treatment or medicine that would

lend credence to Plaintiff's allegations of harassment.  (Id. ¶ 21.)

Plaintiff alleges that in May of 2009, Defendant Clark expressed his belief that Plaintiff's food was being tainted and his frustration at his inability to help Plaintiff.  Dr. Clark did provide Plaintiff with Nutren, conditioned on Plaintiff's promise that he not tell any inmates or staff that he did so. Plaintiff alleges that "Nutren was the best solution of many approaches taken to protect me thereto, because it was far less expensive than most of the 'medications' his subordinates had prescribed." (Id. ¶ 28.)

On July 16, 2009, Plaintiff filed another grievance, contending that Defendants Amrhein, Bandoc and Schultz conspired "to participate in a scheme designed to subject me to the brutal, wanton, and unnecessary cruelty of the c/o's that they knew I would suffer after they cancelled the Nutren." (Id. ¶ 35.)  Defendant Clark heard Plaintiff's grievance, and warned Plaintiff not to "make waves" and let custody know that he had prescribed the Nutren.  Plaintiff explained that he did tell custody, but nobody else, and refused to drop his grievance." (Id. ¶ 36.)  Plaintiff alleges generally that Clark, along with Defendants Amrhein, Bandoc and Schultz were medically trained and were aware that Plaintiff was being subjected to "brutal, wanton, cancellation" of his Nutren." (Id. ¶ 39.)

The Court finds that Plaintiff has failed to cure the defects identified in the order dismissing the first amended complaint as to Defendant Dr. Clark.  Plaintiff's second amended complaint includes a rambling narrative that concludes that Dr. Clark was deliberately indifferent to his serious medical needs.  Plaintiff fails, however, to allege specific facts indicating that Dr. Clark knew of and disregarded a serious medical need of Plaintiff's.  Plaintiff's central grievance is the cancellation of his canned Nutren.  Plaintiff, who is not a medical professional, does not allege any facts indicating that Dr. Clark wholly failed to address Plaintiff's medical needs.  The second amended complaint alleges that Plaintiff was treated with medication and "gastrointestinal remedies."  That Dr. Clark prescribed Nutren then cancelled the prescription does not constitute deliberate indifference.  As noted above, a disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  Sanchez, 891 F.2d at 242.  Plaintiff has been afforded an opportunity to cure the defects identified in the order dismissing

the first amended complaint. Plaintiff has failed to do so, and the Court will recommend that Defendant Clark be dismissed.

### 2. **Defendants Amrhein, Bandoc and Schultz**

Plaintiff alleges that Defendants Amrhein, Bandoc (nurses) and Schultz (dietitian) subjected Plaintiff to deliberate indifference by cancelling his prescription for Nutren. In the order dismissing the first amended complaint, the Court noted Plaintiff failed to allege any facts indicating that any of these Defendants cancelled the prescription knowing that their actions would subject Plaintiff to a substantial risk of serious harm to his health.

In the second amended complaint, Plaintiff again sets forth generalized allegations as to these Defendants. Plaintiff alleges that on "numerous occasions," he met with these Defendants, explained his symptoms and presented them with written declarations of other inmates who experienced similar symptoms. Plaintiff alleges that "on each of the many (more than ten) occasions that I informed Defendants about my suffering," Defendants denied Plaintiff's request for medical evaluations and instead provided him with "gastrointestinal remedies" and tried to "minimize and/or entirely suppress my allegation that c/o's were tainting my meals." (Second Am. Compl. ¶¶ 19, 20.)

Plaintiff alleges that Defendant Bandoc, along with "medical staff," examined Plaintiff prior to January of 2009, and "were consciously-careful to avoid prescribing me any treatment or medicine that, ultimately, might lend credence or support to my allegation of c/o harassment of my (and other inmate's) meals, prescribed me a number of medications, for pain, acid-reflux disease, irritable-bowel syndrome, ulcers, as well as a similarly vast number of 'over-the-counter-type' medications to provide superficial and inadequate treatment for the broad range of ailments" suffered by Plaintiff. (Id. ¶ 21.) The second amended complaint consists of vague and conclusory allegations that defendants in general knew of Plaintiff's painful symptoms, yet failed to offer the treatment that, in Plaintiff's view, was the appropriate treatment. Plaintiff alleges that treatment was provided, but was not the type of treatment he wanted. As with Dr. Clark, Plaintiff fails to allege any facts suggesting a lack of treatment, or any facts indicating that Defendants Amrhein, Bandoc and Schultz knew of a particular danger to Plaintiff's health and

1  was deliberately indifferent to that danger.  These Defendants should therefore be dismissed.

2          **3.**      **Defendant Branson**

3       Although Plaintiff does not name Branson as a Defendant in either the form pleading or
4  narrative second amended complaint, he does refer to a Defendant Branson in his statement of
5  facts.  Plaintiff alleges that prison policy required Branson "to respond to the prisoner's housing
6  area to evaluate him and make a determination whether or not that prisoner should be escorted to
7  the prison hospital for further examination."  Plaintiff vaguely refers to prisoner complaints of
8  chest pains. (Id. ¶ 22.)  Plaintiff also alleges that "LVN's, including but not limited to, Defendant
9  Branson . . . act as Gate-Keepers to deny inmates, including Plaintiff, access to the more
10 thorough examinations, evaluations, and myriad other potential treatment regimens available to
11 inmates suffering from chest-pains at the hospital-locale, but not otherwise available in the
12 housing areas, by presenting said such inmates with biased examinations to support arbitrarily
13 arrived-at evaluative findings that precluded any need that said such inmates be escorted to the
14 hospital from our housing-areas." (Id. ¶ 23.)

15      Plaintiff alleges in general that he routinely presented his complaints to Defendants and
16 other prison staff as "a generalized chest-pain" complaint, until such time as he arrived at the
17 prison hospital, at which time he would "more fully explain my symptoms and/or sensations to
18 medical staff there."   (Id. ¶ 25.)    Plaintiff does not allege any facts indicating that Defendant
19 Branson knew of a particular instance of chest pain and was deliberately indifferent to it.
20 Plaintiff's allegations indicate, at most, routine complaints of chest pain, at which time he was
21 taken to the prison hospital and more fully evaluated.  In order to hold Defendant Branson liable,
22 Plaintiff must allege facts indicating that Defendant Branson knew of a specific risk to Plaintiff's
23 health and was deliberately indifferent to that risk, causing injury to Plaintiff.  Plaintiff has failed
24 to do so.  Defendant Branson should therefore be dismissed.

25         **B.**      **Retaliation**

26      A plaintiff may state a claim for a violation of his First Amendment rights due to
27 retaliation under section 1983.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  A viable
28 claim of retaliation in violation of the First Amendment consists of five elements:"  "(1) an

assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Cartier, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 169 (9th Cir. 2009).

### 1. Defendants Amrhein, Bandoc and Schultz

In the first amended complaint, Plaintiff claimed that Defendants Amrhein, Bandoc and Schultz retaliated against him when they cancelled his prescription for Nutren after he filed an appeal against the nurses. Plaintiff alleged that he filed an inmate appeal on May 9, 2009, complaining that the nurses were opening and tainting his nutritional supplement, Nutren, before it was given to him. Plaintiff alleges that after he refused to withdraw the appeal, Defendants Amrhein, Bandoc and Schultz cancelled his Nutren prescription.

In the order dismissing the first amended complaint, the Court found that Plaintiff failed to state a cognizable claim for retaliation against the nurses and dietitian because he failed to show that cancelling the Nutren prescription was an adverse action against him. If the Nutren was being tainted, as Plaintiff alleged, then preventing the consumption of Nutren was an action that was beneficial, not adverse, to Plaintiff. Further, cancelling medication that Plaintiff alleged was being tainted is not an action that would chill or silence Plaintiff from filing more appeals. Plaintiff fails to correct this deficiency in the second amended complaint. The essential allegations are the same – that Plaintiff was provided a prescription for Nutren, that it was tainted, and that the prescription was cancelled. Plaintiff sets forth his allegations in a different narrative format, but the allegations remain the same. Plaintiff's retaliation claim should therefore be dismissed as to Defendants Amrhein, Bandoc and Schultz.

### 2. Defendant Clark

Plaintiff claims that Dr. Clark retaliated against him because he filed an appeal against the nurses. Plaintiff alleges that on July 16, 2009, he filed an inmate appeal alleging that the nurses had cancelled his prescription against doctor's orders. After filing the appeal, Plaintiff met with Dr. Clark and complained about the cancellation. Dr. Clark told Plaintiff he should not

1 have filed the appeal.  Dr. Clark refused to reinstate the prescription.

2 In the order dismissing the first amended complaint, the Court noted that Plaintiff failed
3 to state a claim against Dr. Clark for retaliation because Plaintiff failed to show the requisite
4 causal connection between his appeal against the nurses and Dr. Clark's refusal to reinstate the
5 prescription.  Plaintiff fails to cure this defect in the second amended complaint.  Plaintiff simply
6 concludes that Dr. Clark retaliated against him because of his appeal.  Plaintiff fails to allege any
7 specific facts indicating a causal connection between his appeal against the nurses and Dr.
8 Clark's decision to reinstate the prescription.  Dr. Clark should therefore be dismissed.

9 **3.     Defendants Austin, Wilson and Yzguerra**

10 Plaintiff claims that Defendants Austin, Wilson and Yzguerra retaliated against him when
11 they refused to transport Plaintiff to his off-site medical appointment after Plaintiff threatened to
12 file an appeal against them for transporting him so early in the morning.  In the order dismissing
13 the first amended complaint, the Court noted that Plaintiff failed to allege facts showing that
14 Yzguerra acted against him, or that there was a causal connection between Yzguerra's conduct
15 and Plaintiff's litigation activities.

16 In the second amended complaint, Plaintiff restates his allegations that Defendants
17 Austin, Wilson and Yzguerra conspired to deny him transportation to his medical appointment.
18 Plaintiff specifically alleges that Wilson suggested that "it's early enough for us to get that other
19 transport with more hours so why put up with this guy's s***, we've got his number, he sues
20 everybody that looks at him wrong  . . . Let's keep this s*** in the gate.  I suggest we haul his
21 ass back to his house and see what else we can get before all the best jobs are taken." (Second
22 Am. Compl. ¶ 46.)   "Defendants Austin, Wilson and Yzguerra agreed, in front of me, that
23 Austin and Wilson should return me to my cell." (Id.)  Plaintiff was returned to his cell, and had
24 to re-initiate the process for getting an outside medical appointment, which took a month.

25 The Court finds that Plaintiff has cured the defects identified in the earlier order.  Plaintiff
26 has alleged facts indicating that Defendants agreed to return Plaintiff to his cell instead of taking
27 him to his medical appointment because of his litigiousness.  Plaintiff therefore states a claim
28 against Defendants Austin, Wilson and Yzguerra for retaliation.

C.  **Due Process**

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself of from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Plaintiff claims that his right to due process was violated because he was not provided with a meaningful inmate appeals process. Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmate." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)(citing Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003)(no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)(existence of grievance procedure confers no liberty interest in prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. At 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E. D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal, without more, are not actionable under section 1983. Buckley, 997 F.2d at 495. Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails to state a cognizable claim for the processing and/or reviewing of his 602 inmate appeals.

D.  **Conspiracy**

12

In the order dismissing the first amended complaint, Plaintiff was advised that in the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some over act was done in furtherance of the conspiracy. Plaintiff must allege that defendants conspired or acted jointly in concert and that some over act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001)(quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)(citation omitted), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441(quoting United Steel Workers, 865 F.2d at 1541).

In the second amended complaint, Plaintiff restates his allegations that Defendants Austin, Wilson and Yzguerra conspired to deny him transportation to his medical appointment. Plaintiff specifically alleges that Wilson suggested that "it's early enough for us to get that other transport with more hours so why put up with this guy's s***, we've got his number, he sues everybody that looks at him wrong . . . Let's keep this s*** in the gate. I suggest we haul his ass back to his house and see what else we can get before all the best jobs are taken." (Second Am. Compl. ¶ 46.) "Defendants Austin, Wilson and Yzguerra agreed, in front of me, that Austin and Wilson should return me to my cell." (Id.) Plaintiff was returned to his cell, and had to re-initiate the process for getting an outside medical appointment, which took a month.

As noted above, in order to state a claim for conspiracy, Plaintiff must allege facts indicating an actual deprivation of a constitutional right. The right at issue here is the delay in Plaintiff's medical appointment. A delay in providing medical care does not constitute deliberate

1 indifference unless an inmate suffers significant harm as a result of the delay.  Hallett v. Morgan,
2 296 F.3d 732, 745-46 (9th Cir. 2002).  To establish deliberate indifference based on a delay in
3 medical treatment, Plaintiff must show the delay itself caused harm.  Berry v. Bunnell, 39 F.3d
4 1056, 1057 (9th Cir. 1994).

   Plaintiff alleges that the approximately one month delay in being seen by a cardiac specialist resulted in "severe chronic pains derived from my doctor's stated unwillingness to adopt any treatment options for the pain until they had a brief and medical analysis from the cardiac specialist upon which they might better inform any course of treatment." (Second. Am. Compl. ¶ 49.)   Plaintiff does not allege any facts indicating that he suffered from a specific cardiac condition, or any facts indicating that a medical professional diagnosed any injury as a result of the delay in seeing a cardiac specialist.  There are no facts alleged indicating that the Defendant transportation officers knew of a serious risk to Plaintiff's health.  The allegations of the second amended complaint indicate that Plaintiff constantly suffered from the alleged lack of Nutren, and not from a diagnosed cardiac condition.  The second amended complaint alleges that Plaintiff routinely complained of chest pains, but does not allege any facts indicating that any of the named Defendants, or any other medical staff, diagnosed Plaintiff with a cardiac condition necessitating any particular treatment.  Plaintiff alleges, at most, that he was sent out for a cardiac consultation to help diagnose Plaintiff's condition.  The allegations of the second amended complaint indicate that Plaintiff was eventually seen by a specialist, but does not allege what that specialist discovered.  Specifically, there are no allegations that Plaintiff was diagnosed with any injury that was caused by the delay.  Plaintiff therefore fails to allege facts stating a claim for an Eighth Amendment violation against Defendants Austin, Wilson and Yzguerra. Because Plaintiff was not actually deprived of a constitutional right, Defendants are not liable for conspiracy to violate Plaintiff's constitutional rights.

### E. California Civil Code

Plaintiff alleges a claim for violation of California Civil Code § 52.1, which authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with individual's exercise or enjoyment of rights secured by federal or state law."

Jones v. Kmart Corp., 17 Cal. 4th 329, 331 (1998). A claim under section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by coercion." Id. at 334. Plaintiff has not alleged any facts demonstrating that he was threatened, intimidated or coerced during the interference with his First Amendment rights. Therefore, Plaintiff fails to state a cognizable claim for violation of section 52.1.

### F. Negligence

Plaintiff claims that Defendants Amrhein, Austin, Branson, Bandoc, Clark, Schultz, Wilson and Yzguerra owed a duty of care to Plaintiff and as a direct and proximate result of their violations of his rights as alleged in the complaint, each Defendant breached their duty, resulting in injury to Plaintiff.

As to Defendants Amrhein, Branson, Bandoc, Clark and Schultz, the federal claims against them have been dismissed. Supplemental jurisdiction in federal question cases extends to claims by any party that are sufficiently related to the federal claim to be a part of the "same case or controversy." 28 U.S.C. § 1367(a). The "common nucleus of operative facts" test is the standard for supplemental jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Here, Plaintiff sets forth two distinct "nuclei" of operative facts. The central grievance in this action as to Defendants Amrhein, Branson, Bandoc, Clark and Schultz is the failure of medical officials to provide Nutren for Plaintiff, and their decision to discontinue it. The decision to not transport Plaintiff to a medical appointment because of his litigious history is separate and apart from Plaintiff's medical claims. The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's negligence claim against Defendants Amrhein, Branson, Bandoc, Clark and Schultz. The negligence claim against Defendants Austin, Wilson and Yzguerra survives.

### IV    Conclusion.

The February 23, 2015, second amended complaint states a claim for relief against Defendants Austin, Wilson and Yzguerra for retaliation in violation of the First Amendment and state law negligence. The second amended complaint fails to state a claim for relief on any of Plaintiff's remaining claims. The order dismissing the first amended complaint provided

15

Plaintiff with notice of the deficiencies and granted Plaintiff an opportunity cure the deficiencies identified in that order. The Court therefore will recommend dismissal of the remaining claims and Defendants with prejudice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)(dismissal with prejudice upheld where court had instructed plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. This action proceed on the February 23, 2015, second amended complaint against Defendants Austin, Wilson and Yzguerra on Plaintiff's claims of retaliation in violation of the First Amendment and Plaintiff's state law negligence;

2. Plaintiff's claims of Eighth Amendment deliberate indifference, Due Process, Conspiracy, and California Civil Code Section 52.1 be dismissed;

3. Defendants Amrhein, Bandoc, Clark, Schultz and Branson be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provision of Title 28 U.S.C. (b)(1). Within **fourteen (14)** days after being served with these Finding and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.2d F.3d 834, 838-39 (9th Cir. 2014)(citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 22, 2015**    /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE